# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John W. Darrah | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 8238 | **DATE** | 12/3/2001 |
| **CASE TITLE** | JUDY ZAPKA vs. THE COCA-COLA COMPANY | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Status hearing held and continued to 12/11/01 at 9:00 a.m. Enter Memorandum Opinion And Order. Defendant's motion for summary judgment [62-1] is denied. Plaintiff's motion to remand [68-1] is denied.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | | Document Number |
|---|---|---|---|---|---|
| | No notices required. | | | number of notices | |
| | Notices mailed by judge's staff. | | | | |
| | Notified counsel by telephone. | | | DEC 05 2001 date docketed | 90 |
| ✓ | Docketing to mail notices. | | | | |
| | Mail AO 450 form. | | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | | |
| | | | 01 DEC -4 PM 5:29 | date mailed notice | |
| LG | courtroom deputy's initials | | Date/time received in central Clerk's Office | mailing deputy initials | |

# UNITED STATES DISTRICT COURT,
# NORTHERN DISTRICT OF ILLINOIS,
# EASTERN DIVISION.

| | |
|---|---|
| JUDY ZAPKA, | ) |
| Plaintiff, | ) Case No. 99 C 8238 |
| v. | ) The Honorable John W. Darrah |
| THE COCA-COLA COMPANY, a Delaware Corporation, | ) |
| Defendant. | ) |

**DOCKETED**
DEC 0 5 2001

## MEMORANDUM OPINION AND ORDER

Plaintiff, Judy Zapka ("Plaintiff" or "Zapka"), filed a one-count Complaint in the Circuit Court of Cook County, alleging that Defendant, the Coca-Cola Company ("Defendant" or "Coca-Cola"), violated the Illinois Consumer Fraud Act, 815 Ill. Comp. Stat. 505/1 *et seq.*, by advertising and representing that diet COKE is sweetened with aspartame or NUTRASWEET when only canned and bottled diet COKE are sweetened with 100 % aspartame or NUTRASWEET and fountain diet COKE is sweetened with a mixture of saccharin and aspartame. Defendant removed the case to this court under 28 U.S.C. §§ 1332, 1441, and 1446.

Defendant has filed a motion for summary judgment. Plaintiff has filed a motion to remand. For the reasons that follow, Coca-Cola's Motion for Summary Judgment [62-1] is denied, and Plaintiff's Motion to Remand [68] is denied.

## LEGAL STANDARD

Summary judgment is appropriate when there remains no genuine issue of material fact and

the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Cincinnati Ins. Co. v. Flanders Elec. Motor Serv., Inc.*, 40 F.3d 146, 150 (7th Cir. 1994). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Thus, although the moving party on a motion for summary judgment is responsible for demonstrating to the court why there is no genuine issue of material fact, the non-moving party must go beyond the face of the pleadings, affidavits, depositions, answers to interrogatories, and admissions on file to demonstrate through specific evidence that there remains a genuine issue of material fact and show that a rational jury could return a verdict in the non-moving party's favor. *Celotex*, 477 U.S. at 322-27; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254-56 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 923 (7th Cir. 1994).

Disputed facts are material when they might affect the outcome of the suit. *First Ind. Bank v. Baker*, 957 F.2d 506, 507-08 (7th Cir. 1992). When reviewing a motion for summary judgment, a court must view all inferences to be drawn from the facts in the light most favorable to the opposing party. *Anderson*, 477 U.S. at 247-48; *Popovits v. Circuit City Stores, Inc.*, 185 F.3d 726, 731 (7th Cir. 1999). However, a metaphysical doubt will not suffice. *Matsushita*, 475 U.S. at 586. If the evidence is merely colorable or is not significantly probative or is no more than a scintilla, summary judgment may be granted. *Anderson*, 477 U.S. at 249-250.

## BACKGROUND

The undisputed facts taken from the parties' Local Rule 56.1(a) & (b) statements of material facts (referred to herein as "Pl.'s 56.1" and "Def.'s 56.1") and exhibits are as follows.

Plaintiff, Judy Zapka, is a resident of Willowbrook, Illinois. (Def.'s 56.1 ¶ 1.) Defendant,

the Coca-Cola Company, is a Delaware corporation with its principal place of business in Atlanta, Georgia. (Def.'s 56.1 ¶ 2.) Coca-Cola does business in Illinois and every other state in the country. (Def.'s 56.1 ¶ 2.)

Zapka originally filed this case on November 10, 1999, in the Circuit Court of Cook County, Illinois. (Def.'s 56.1 ¶ 3.) On December 17, 1999, Coca-Cola removed the case to this court under 28 U.S.C. §§ 1332, 1441 and 1446. (Def.'s 56.1 ¶ 4.) Coca-Cola asserted diversity jurisdiction, stating that there was complete diversity of citizenship between plaintiff and defendant and that it would cost Coca-Cola more than $1,000,000 to comply with the requested injunctive relief or to disgorge profits made from the alleged conduct. (Def.'s 56.1 ¶ 4.)

Coca-Cola manufactures and produces concentrates and syrups which are used to create "finished" soft drinks, syrup combined with carbonated water. (Def.'s 56.1 ¶ 6.) Coca-Cola sells fountain syrup to its retail customers, i.e. fountain outlets. (Def.'s 56.1 ¶ 6.) The fountain outlets produce the finished fountain drinks and sell these finished drinks to the consuming public. (Def.'s 56.1 ¶ 6.)

Before November 1984, all diet COKE drinks, whether bottled, canned or sold through fountain outlets ("fountain diet COKE"), were sweetened with either saccharin or a blend of saccharin and aspartame. (Def.'s 56.1 ¶ 7.) On November 29, 1984, Coca-Cola announced that it would replace the saccharin in diet COKE with aspartame. (Def.'s 56.1 ¶ 8; Pl's Ex. 1, Def.'s Answer Second Am. Compl. ¶ 26.) It also stated, at that time, that, "for now", the fountain diet COKE would not be changed to aspartame only. (Pl.'s Ex. 1 ¶26.)

From November 29, 1984 to approximately 1993, Coca-Cola marketed diet COKE drinks with a NUTRASWEET brand pinwheel on labels of bottled diet COKE and in advertisements.

(Def.'s 56.1 ¶ 9.) During that same period of time, television and print advertisements for diet COKE continued to state that diet COKE with 100% NUTRASWEET was not available at fountain outlets. (Def.'s 56.1 ¶ 9.) Coca-Cola did not state in its advertisements that fountain diet COKE contained saccharin. (Pl.'s 56.1 ¶ 2.) From sometime in 1993 to the present, diet COKE advertisements have not contained any information that would inform consumers that fountain and bottled or canned diet COKE are not the same product or that fountain diet COKE contains saccharin or that fountain diet COKE even contains a different sweetener than bottled or canned diet COKE. (Pl.'s 56.1 ¶ 3.) Coca-Cola labeled its fountain diet COKE syrup containers for its direct purchasers in accordance with federal law, and these labels disclose saccharin as an ingredient in fountain diet COKE. (Def.'s 56.1 ¶ 12.)

In 1993, Coca-Cola stopped using the NUTRASWEET pinwheel on labels and in advertisements. (Def.'s 56.1 ¶ 11.) Fountain diet COKE drinks always contained, and continue to contain, a blend of aspartame and saccharin. (Def.'s 56.1 ¶ 11.) Since at least 1990, Coca-Cola has known that many consumers were unaware that fountain diet COKE used different sweeteners than bottled diet COKE and that fountain diet COKE contained saccharin. (Pl.'s 56.1 ¶ 4.) The Federal Trade Commission ("FTC") has investigated whether Coca-Cola deceptively marketed diet COKE. (Pl.'s 56.1 ¶ 5.) The FTC closed its investigation in 1994. (Pl.'s Ex. 7.)

Zapka was pregnant in 1998-1999. (Pl.'s 56.1 ¶ 7.) Acting on the advice of her doctor, during her pregnancy, Zapka attempted to prevent ingestion of any product she knew contained saccharin. (Pl.'s 56.1 ¶ 6.) Zapka saw the advertisements, but she does not recall the statements in those advertisements that diet COKE with 100% NUTRASWEET was not available at fountain outlets. (Def.'s 56.1 ¶ 10.) Zapka admitted that, if she had seen those statements, she would have

known that fountain diet COKE contained saccharin. (Def.'s 56.1 ¶ 10.) She also admitted that she never saw any advertisement stating that fountain diet COKE and canned or bottled diet COKE were exactly the same. (Def.'s 56.1 ¶ 10.)

On November 10, 1999, Zapka filed her one-count complaint against Coca-Cola, alleging that she drank fountain diet COKE after November 29, 1984, believing that it was sweetened only with aspartame. (Def.'s 56.1 ¶ 12.)

## DISCUSSION

*Motion to Remand*

Plaintiff Zapka has moved to remand this cause of action to the Circuit Court of Cook County, arguing that Coca-Cola has not established diversity of citizenship and the amount in controversy required under 28 U.S.C. § 1332 (2001).

Section 1332 provides that "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000 . . . and is between . . . citizens of different States". 28 U.S.C. § 1332(a)(1). Zapka argues that Coca-Cola has not established that the amount in controversy requirement has been met because Zapka's claim is worth only $200. (Mot. Remand Ex. 1 at 4.)

"The burden rests on the defendant in a removal action to prove that the amount in controversy is sufficient." *Shaw v. Dow Brands, Inc.*, 994 F.2d 364, 366 (7th Cir. 1993) (citing *Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 97 (1921)). Zapka seeks injunctive relief. Whether the value of the injunctive relief satisfies the amount in controversy requirement can be determined in several ways: (1) the value of the injunction to the plaintiff exceeds the statutory minimum–the "plaintiff only" position, (2) "the injunction sought by [plaintiff] would require

-5-

some alteration in the defendant's method of doing business that would cost the defendant at least the statutory minimum amount"–"either viewpoint", and (3) the "defendant's clerical or ministerial costs of compliance might carry a case across the threshold." *In re Brand Name Prescription Drug Lit.*, 123 F.3d 599, 609-10 (7th Cir. 1997). The Seventh Circuit favored the second approach, either viewpoint, in *McCarty v. Amoco Pipeline Co.*, 595 F.2d 389 (7th Cir. 1979). The court will adopt that approach here.

Coca-Cola has presented evidence that the cost of engaging in an advertising campaign concerning the presence of saccharin in diet COKE products, other than labeling, would cost $1,000,000. (Mot. Remand, Ex. 2, Brink Aff. ¶ 3.) Such a campaign would constitute a change in the defendant's method of doing business that costs at least the statutory minimum since Coca-Cola currently does not advertise the presence of saccharin in fountain diet COKE. Therefore, under the either viewpoint test, the amount in controversy requirement is met.

Zapka also argues that the requirement that the parties are citizens of different states has not been met because Coca-Cola merely alleged that she was a resident of Willowbrook, Illinois in its notice of removal. Zapka has already conceded that she is a citizen of Illinois by not contesting removal on this ground when the motion was originally made. *See Shaw*, 994 F.2d at 367-68 (holding plaintiff had conceded amount in controversy requirement was met by not contesting removal when the motion was originally made). Therefore, Coca-Cola has satisfied the requirements for diversity jurisdiction, and a remand to the Circuit Court of Cook County would be inappropriate.

*Motion for Summary Judgment*

Defendant Coca-Cola has moved for summary judgment on Plaintiff Zapka's claim that

Coca-Cola violated the Consumer Fraud Act by advertising and representing that diet COKE is sweetened with aspartame or NUTRASWEET when fountain diet COKE is sweetened with a mixture of saccharin and aspartame. Coca-Cola argues that summary judgment is proper because: (1) Coca-Cola's full compliance with the labeling and notification requirements of the Federal Food, Drug, and Cosmetic Act ("FFDCA"), 21 U.S.C. § 343 (2001), is a complete defense to a claim under section 10b of the Consumer Fraud Act; (2) since Zapka's claim implicates the labeling and notification requirements for all drinks containing saccharin and such requirements are subject to regulation by the Food and Drug Administration ("FDA"), the court should defer to the FDA under the doctrine of primary jurisdiction; and (3) Zapka's claim is barred by the three-year statute of limitations of the Consumer Fraud Act. (Coca-Cola's Mem. Supp. Mot. Summ. J. at 1-2.)

The Consumer Fraud Act provides:

> Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act, approved August 5, 1965, in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby. In construing this section consideration shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to Section 5(a) of the Federal Trade Commission Act.

815 Ill. Comp. Stat. 505/2 (2001). To prove a violation of this section of the Consumer Fraud Act, Zapka must prove that: (1) Coca-Cola engaged in a deceptive act or practice, (2) Coca-Cola intended that she rely on the act or practice, (3) the act or practice occurred in the course of conduct involving a trade or commerce, and (4) the consumer fraud proximately caused her injuries. *Perona v. Volkswagon of America, Inc.*, 292 Ill. App. 3d 59, 65 (Ill. App. Ct. 1997).

Coca-Cola argues that its compliance with the labeling and notification requirements of the FFDCA is a complete defense to claims under the Consumer Fraud Act pursuant to section 10b of the Act. Section 10b(1) of the Consumer Fraud Act provides, "Nothing in this Act shall apply to any of the following . . . [a]ctions or transactions specifically authorized by laws administered by any regulatory body or officer acting under statutory authority of this State or the United States." 815 Ill. Comp. Stat. 505/10b(1) (2001). "Under this provision, conduct which is authorized by Federal statutes and regulations . . . is exempt from liability under the Consumer Fraud Act." *Lanier v. Associates Finance, Inc.*, 114 Ill. 2d 1, 17 (Ill. 1986) (citing *Mario's Butcher Shop & Food Center, Inc. v. Armour & Co.*, 574 F. Supp. 653 (N.D. Ill. 1983)); *see also Weatherman v. Gary-Wheaton Bank of Fox Valley*, 186 Ill. 2d 472, 487 (Ill. 1999) (holding compliance with the federal Real Estate Settlement Procedures Act rendered defendant exempt from liability under the Consumer Fraud Act).

Coca-Cola argues that its compliance with the FFDCA and the FFDCA's implementing regulations' labeling requirements exempts it from liability pursuant to section 10b of the Consumer Fraud Act. It is undisputed that Coca-Cola labeled its fountain diet COKE syrup containers for its direct purchasers in accordance with federal law or that these labels disclosed saccharin as an ingredient in fountain diet COKE. However, the conduct that Zapka alleges to be a deceptive act or practice under the Consumer Fraud Act is not the *labeling* of diet COKE but the *marketing* of diet COKE. (Second Am. Compl. ¶¶ 1, 34, 55, 63.)

Compliance with the labeling and notification requirements of the FFDCA cannot exempt Coca-Cola from liability pursuant to section 10b of the Consumer Fraud Act because the FFDCA does not "specifically authorize" the marketing practices of which Zapka complains. Furthermore, Coca-Cola has not directed the Court to any other federal statute or regulation that would

"specifically authorize" its marketing practices. Therefore, Coca-Cola is not exempt from liability pursuant to section 10b of the Consumer Fraud Act.

Coca-Cola next argues that summary judgment is appropriate because the notification requirements for all drinks containing saccharin are subject to regulation by the FDA. Coca-Cola argues that, therefore, the Court should defer to the FDA under the doctrine of primary jurisdiction. The doctrine of primary jurisdiction is "specifically applicable to claims properly cognizable in court that contain some issue within the special competence of an administrative agency. It requires the court to enable a 'referral' to the agency, staying further proceedings so as to give the parties reasonable opportunity to seek an administrative ruling." *Reiter v. Cooper*, 507 U.S. 258, 268 (1993) (citing *United States v. Western Pac. R.R. Co.*, 352 U.S. 59, 63-64 (1956); *Ricci v. Chicago Mercantile Exch.*, 409 U.S. 289. 291, 302 (1973); *Port of Boston Marine Terminal Ass'n v. Rederiaktiebolaget Transatlantic*, 400 U.S. 62, 65, 68 (1970)). The court has discretion to retain jurisdiction or dismiss the case without prejudice if the parties would not be "unfairly disadvantaged." *Reiter*, 507 U.S. at 268-69 (citations omitted).

Coca-Cola argues that the Court should dismiss Zapka's claim because "the disclosure and labeling requirements for food and drink ingredients, . . . specifically the disclosure of saccharin . . . , is within the FDA's specialized area of expertise, and there is a need for uniformity in such disclosure or labeling requirements" on fountain soft drinks. (Coca-Cola's Mem. Supp. Mot. Summ. J. at 9.) There is a need for uniformity in disclosure of saccharin in fountain soft drinks. However, while the FDA has specialized expertise in the branding and labeling of food and drinks, it does not have specialized expertise in the marketing or advertising of food and drinks. Therefore, a referral to the FDA is inappropriate, and the Court will not dismiss the instant action.

Finally, Coca-Cola argues that summary judgment is appropriate because Zapka's action is barred by the statute of limitations. The Consumer Fraud Act has a three-year statute of limitations. 815 Ill. Comp. Stat. 505/10a(e) (2001). Under Illinois law, a cause of action accrues "when a person knows or reasonably should know of his injury and also knows or reasonably should know that it was wrongfully caused." *Knox College v. Celotex Corp.*, 88 Ill. 2d 407, 415 (Ill. 1982).

Coca-Cola argues that Zapka's claim is barred by the statute of limitations because Zapka reasonably should have known of her alleged injury before 1999, and her injury was allegedly caused by Coca-Cola more than three years before she filed her lawsuit. (Coca-Cola's Mem. Supp. Mot. Summ. J. at 13.) Coca-Cola argues that Zapka reasonably should have known of her alleged injury before 1999 because (1) its press release of November 29, 1984 disclosed that fountain diet COKE would continue to contain saccharin; (2) from November 29, 1984 until 1993, television and print advertisements for diet COKE stated that diet COKE sweetened with aspartame only was not available at soda fountains; (3) the different ingredients in bottled and fountain diet COKE have been recognized by the courts; (4) the labels on diet COKE syrup containers disclose saccharin as an ingredient; and (5) the ingredients of fountain diet COKE are listed in brochures and posted on charts at places where fountain diet COKE is sold, such as McDonald's. (Coca-Cola's Mem. Supp. Mot. Summ. J. at 13-15.) Coca-Cola argues, thus, there is plenty of evidence that Zapka reasonably could have discovered that fountain diet COKE contained saccharin before 1999 when she filed her complaint.

"At some point the injured person becomes possessed of sufficient information concerning his injury and its cause to put a reasonable person on inquiry to determine whether actionable conduct is involved." *Knox College*, 88 Ill. 2d at 416. The *Knox College* court held that this

determination is a question of fact. *Knox College*, 88 Ill. 2d at 416. Likewise, in this case, when Zapka became possessed of sufficient information concerning her injury and its cause to put a reasonable person on inquiry is a question of fact. There is a genuine issue of material fact as to when Zapka knew or reasonably should have known that fountain diet COKE was still sweetened with saccharin.

Coca-Cola has not presented any evidence that other persons, when presented with the same advertisements, press releases and labels, became cognizant that fountain diet COKE was still sweetened with saccharin after November 29, 1984. Also, it is difficult to believe that the labels on fountain diet COKE syrup containers could be very informative to the consumer since the consumer does not inspect that container. Coca-Cola has argued that Zapka has seen these containers "when she worked at a McDonald's restaurant or elsewhere." (Coca-Cola's Mem. Supp. Mot. Summ. J. at 14.) However this argument is undermined by Zapka's deposition testimony.

> Q. Did you see they [fountain soft drinks] were sold in a syrup form during that period of time?
> A. Yes.
>
> * * * * *
>
> Q: And did you ever have occasion when you went to fill up a cup when you worked at McDonald's and it was empty?
> A. Yes.
> Q. What happened then? What did you have to do then?
> A. Someone would fill it.
> Q. And fill what?
> A. I guess the other tanks.
>
> * * * * *
>
> Q. Did you ever see where the syrup came from that goes into making the drink?
> A. No.

(Def.'s Ex. D., Zapka Dep. at 67-69.) This testimony does not overwhelmingly establish that, in the course of her employment, Zapka had an opportunity to examine the labels on the syrup containers

or that she had seen the labels disclosing saccharin as an ingredient in fountain diet COKE. Whether or not she did is a genuine issue of material fact for the factfinder.

Although neither party has addressed the issue in their briefing, there are genuine issues of material fact as to whether (1) Coca-Cola engaged in a deceptive act or practice, (2) Coca-Cola intended that Zapka rely on the act or practice, (3) the act or practice occurred in the course of conduct involving a trade or commerce, and (4) the consumer fraud proximately caused Zapka's injuries. *Perona*, 292 Ill. App. 3d at 65.

The FTC has investigated whether Coca-Cola deceptively marketed diet COKE. This is sufficient to establish a genuine issue of material fact as to whether Coca-Cola engaged in a deceptive act or practice.

Coca-Cola has known since 1990 that many consumers were unaware that fountain diet COKE used different sweeteners than bottled or canned diet COKE or that fountain diet COKE contained saccharin. Despite this knowledge, since 1993, diet COKE advertisements have not contained any information that discloses the use of different sweeteners or that fountain diet COKE contains saccharin. This is sufficient to establish a genuine issue of material fact as to whether Coca-Cola intended Zapka to rely on its allegedly deceptive practice.

The evidence presented to the Court establishes that the fountain diet COKE was sold at the fountain outlets with no disclosure of a difference between fountain diet COKE and canned or bottled diet COKE. This is sufficient to establish a genuine issue of material fact as to whether the act or practice occurred in the course of conduct involving trade or commerce.

Zapka has presented evidence that she would not have purchased fountain diet COKE at the time she was pregnant if she had known it contained saccharin. Zapka has alleged that she was

duped into purchasing fountain diet COKE because she believed it contained aspartame not saccharin. This is sufficient to establish a genuine issue of material fact as to whether Coca-Cola proximately caused Zapka's injury. Thus, Zapka has offered evidence from which a rational jury could conclude that Coca-Cola violated the Consumer Fraud Act.

## CONCLUSION

For the reasons stated herein, Coca-Cola's Motion for Summary Judgment [62-1] and Plaintiff's Motion to Remand [68] are denied.

**IT IS SO ORDERED.**

John W. Darrah, Judge
United States District Court

Date: December 3, 2001